RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Ben Wang, SBN 228712
bwang@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
SPEX TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., HGST, INC. <br><br> Defendants. | Case No. 8:16-cv-01799 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Russ, August & Kabat

1. Plaintiff SPEX Technologies, Inc. ("SPEX" or "Plaintiff"), for its Complaint against Defendants Western Digital Corporation, Western Digital Technologies, Inc., and HGST, Inc. (collectively, "Defendants"), hereby alleges as follows:

## PARTIES

2. SPEX is a California corporation with its headquarters at 1860 Hartog Dr., San Jose, CA 95131.

3. On information and belief, Western Digital Corporation is a Delaware corporation with its headquarters at 3355 Michelson Drive, Suite 100, Irvine, California 92612.

4. On information and belief, Western Digital Technologies, Inc. is a Delaware corporation with its headquarters at 3355 Michelson Drive, Suite 100, Irvine, California 92612.

5. Western Digital Corporation and Western Digital Technologies, Inc. are collectively referred to as "Western Digital."

6. On information and belief, HGST, Inc. ("HGST") is a Delaware corporation with its headquarters at 3355 Michelson Drive, Suite 100, Irvine, California 92612.

## NATURE OF THE ACTION

7. This is a civil action for the infringement of United States Patent No. 6,088,802 (the "'802 patent") (attached as Exhibit A) and United States Patent No. 6,003,135 (the "'135 patent") (attached as Exhibit B) (collectively, the "Patents-in-Suit") under the patent laws of the United States, 35 U.S.C. § 1, et seq.

8. This action involves Defendants' manufacture, use, sale, offer for sale, and/or importation into the United States of infringing products, methods, processes, services and systems that are hardware encrypting memory products that infringe one or more of the claims of the Patents-in-Suit.

1

**COMPLAINT**

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, et seq.

10. Defendants are subject to personal jurisdiction in this judicial district because Defendants regularly transact business in this judicial district by, among other things, offering Defendants' products and services to customers, business affiliates and partners located in this judicial district. In addition, Defendants have committed acts of direct infringement of one or more of the claims of one or more of the Patents-in-Suit in this judicial district.

11. Venue in this district is proper under 28 U.S.C. §§ 1400(b) and 1391(b) and (c), because Defendants are subject to personal jurisdiction in this district and have committed acts of infringement in this district.

12. On information and belief, joinder is appropriate because HGST is owned by Western Digital. *See, e.g.*, http://www.pcworld.com/article/251546/western_digital_closes_hitachi_gst_acquisition_to_operate_separate_subsidiaries.html (Western Digital purchased HGST in 2012).

## FACTUAL BACKGROUND

13. The Patents-in-Suit were originally assigned to Spyrus, Inc. ("Spyrus"). SPEX acquired full rights to the Patents-in-Suit from Spyrus.

**SPYRUS IS A PIONEERING ENCRYPTION COMPANY THAT HAS DEVELOPED CRYPTOGRAPHIC PRODUCTS RELIED ON TO SECURE ALL TYPES OF SENSITIVE INFORMATION**

14. Spyrus was founded around October 1992 by two pioneering women. The founding concept of Spyrus was to make cryptography more affordable and usable for distributing and accessing electronic content.

Russ, August & Kabat

15. Instead of building up the company with venture capital money, Spyrus initially built itself up using small capital investments from friends and family. Spyrus' first major achievement was to propose and win a contract with the Department of Defense ("DoD") to design a specification for a hardware security module ("HSM") to be used for encrypting sensitive communications. In 1993, Spyrus released the LYNKS HSM based on an ARM processor.

16. In approximately 1993 or 1994, in partnership with Mykotronx, Spyrus released the successor to the LYNKS HSM, the Fortezza Crypto Card, originally named the Tessera Crypto Card. *See, e.g.*, https://en.wikipedia.org/wiki/Fortezza. The Fortezza Crypto Card and its successor versions were capable of protecting sensitive data, including classified data. The Fortezza Crypto Card was used in a number of government and military applications.

17. Around 1996 or 1997, Spyrus began expanding on the cryptographic technology embodied in the LYNKS HSM and Fortezza Crypto Card technologies. In particular, Spyrus developed its Hydra series of products, which added capabilities such as flash memory or modem functionalities to the family of LYNKS HSM and Fortezza Crypto Card technologies. Spyrus' initial Hydra products were released around 1997. Spyrus' Hydra-based products are still sold today. Spyrus' Hydra-based products include the PocketVault P-3X, PocketVault P-384, PocketVault P-384E, Worksafe, Worksafe Pro and Secure Portable Workplace.

18. Spyrus' Hydra-based products have won awards and have been consistently praised. *See, e.g.*, http://www.pcmag.com/article2/0,2817,2478715,00.asp (editor rating of "Excellent" for the Worksafe Pro); http://www.pcmag.com/article2/0,2817,2478716,00.asp (editor rating of "excellent" for the Worksafe); http://www.thessdreview.com/our-reviews/spyrus-worksafe-pro-wtg-secure-flash-drive-review-worlds-secure-flash-drive/3/ (Worksafe Pro was given an "Editor's Choice" award; called the "worlds most secure flash drive");

3
**COMPLAINT**

http://www.spyrus.com/spyrus-named-winner-in-2011-golden-bridge-awards-for-virtual-office-technology/ (Secure Pocket Drive named the winner in the Virtual Office Technology category of the 3rd Annual 2011 Golden Bridge Awards as well as the Security Products Guide's Tomorrow's Technology Today award and the GSN Homeland Security award); http://www.darkreading.com/risk/nsa-approves-spyrus-hyrda-pc-for-protection-of-classified-government-data/d/d-id/1132286?print=yes (Hydra Privacy Card Series II was first commercial-off-the-shelf device approved by the DoD to protect confidential information at SECRET level and below); http://www.businesswire.com/news/home/20060612005367/en/Info-Security-Products-Guide-Names-SPYRUS-Hydra (Hydra Privacy Card Series II won 2006 Global Excellence in Secure and Removable Mass Storage Device Award from Info Security Products Guide); http://www.scmagazine.com/spyrus-hydra-privacy-card-series-ii/review/1087/ (very positive review of Hydra Privacy Card Series II; "If you deal with sensitive data, especially on laptops, you need the Hydra").

19. The Patents-in-Suit, and Spyrus' technology, have been licensed in the past by Kingston Digital, Inc. and PNY Technologies, Inc.

20. SPEX was formed to facilitate licensing of the technology developed and practiced by Spyrus in both domestic and foreign markets.

**THE PATENTS-IN-SUIT**

21. SPEX is the owner by assignment of the Patents-in-Suit. SPEX owns all rights to the Patents-in-Suit, including the right to enforce the Patents-in-Suit.

22. United States Patent No. 6,088,802, entitled "Peripheral Device With Integrated Security Functionality," issued on July 11, 2000 from United States Patent Application No. 08/869,305 filed on June 4, 1997. A true and correct copy of the '802 patent is attached as Exhibit A.

23. United States Patent No. 6,003,135, entitled "Modular Security Device," issued on December 14, 1999 from United States Patent Application No.

08/869,120 filed on June 4, 1997. A true and correct copy of the '135 patent is attached as Exhibit B.

24. All maintenance fees for the Patents-in-Suit have been timely paid, and there are no fees currently due.

## COUNT I

## (DEFENDANTS' INFRINGEMENT OF THE '802 PATENT)

25. Paragraphs 1 through 24 are incorporated by reference as if fully restated herein.

26. United States Patent No. 6,088,802, entitled "Peripheral Device With Integrated Security Functionality," issued on July 11, 2000 from United States Patent Application No. 08/869,305 filed on June 4, 1997. A true and correct copy of the '802 patent is attached as Exhibit A.

27. On information and belief, Defendants have made, used, offered for sale, sold and/or imported into the United States products that infringe various claims of the '802 patent, and continue to do so. By way of illustrative example, these infringing products include, without limitation, Defendants' hardware encrypting storage solutions, including but not limited to Western Digital's Verdi Self Encrypting Drive, My Book series, My Passport series, Re series, SanDisk's x300s series, and HGST's Ultrastar HE10 series, Ultrastar HE8 series, Ultrastar HA10 series, Ultrastar 7K6000 series, Ultrastar 7K4000, Travelstar Z7K500 series, Travelstar Z5K1000 series, Travelstar Z5K500 series, Travelstar 5K1000 series and Travelstar 7K1000 series.

28. Defendants have been and now are directly infringing one or more claims of the '802 patent under 35 U.S.C. §271(a), in this judicial District and elsewhere in the United States, by, among other things, making, using, selling, offering to sell and/or importing into the United States for subsequent sale or use hardware encrypting storage solutions that include, for example, (a) a cryptographic processor for performing security operations on data; (b) mass storage memory, such

as flash or magnetic storage; (c) an interface between the cryptographic processor and the mass storage memory; (d) an interface with the host computer (*e.g.*, a USB or SATA interface); and (e) a mediating interface that ensures that data communicated between the host computer and mass storage memory passes through the cryptographic processor. Exemplary charts showing how Defendants infringe the '802 patent are attached as Exhibits C, D and E.[1] Exhibits C, D and E are based on the public information available to Plaintiff, and Plaintiff reserves the right to amend Exhibits C, D and E based on information obtained through discovery. Accordingly, the aforementioned products infringe the '802 patent literally and/or under the doctrine of equivalents.

29. Defendants actively, knowingly, and intentionally induce, and continue to actively, knowingly, and intentionally induce, infringement of the '802 patent under 35 U.S.C. §271(b) by their customers and end users.

30. Defendants have had knowledge of and notice of the '802 patent and its infringement. For example, SanDisk Corporation[2] ("SanDisk") approached Spyrus around October 2006 about entering into a business relationship. SanDisk unquestionably learned about the '802 patent during these discussions. SanDisk's awareness and understanding of the '802 patent is further confirmed by SanDisk's citation of the '802 patent to the United States Patent and Trademark Office during the prosecution of a number of its patents, including but not limited to U.S. Patent No. 7,373,656 and U.S. Patent No. RE44,641. Western Digital has been aware of

---

[1] Plaintiff reserves the right to assert additional claims of the '802 patent against Defendants as the litigation proceeds. For example, Plaintiff expressly reserves the right to assert additional claims in its infringement contentions to be served during the discovery process.

[2] On information and belief, SanDisk Corporation was merged into Western Digital in May 2016. http://www.wdc.com/en/company/pressroom/releases/Default.aspx?release=113105ba-cb37-49f6-8fab-de43c41d7334 (Western Digital purchased SanDisk in May 2016).

the '802 patent since prior to August 1, 2005, when the '802 patent was submitted on an Information Disclosure Statement to the United States Patent and Trademark Office during the prosecution of the application that led to U.S. Patent No. 6,973,570. The '802 patent was also cited to Western Digital by a patent examiner during the prosecution of U.S. Patent No. 6,735,693. In any event, Defendants have had knowledge and notice of the '802 patent since at least the filing of this complaint.

31. Defendants have induced their customers and end users to infringe the '802 patent by using hardware encrypting storage solutions to (a) communicate with a host computer to exchange data with the hardware encrypting storage solution; (b) perform security operations on the data; (c) store or retrieve the data; and (d) mediate communications so that data must first pass through the hardware encrypting processor. *See, e.g.*, Exs. C, D, E. For example, Defendants encourage their customers and end users to perform infringing methods by the very nature of the products. When using the infringing products, security operations are performed on all data passed between Defendants' infringing products and the customer's or end user's computer.

32. Defendants specifically intend their customers and/or end users infringe the '802 patent, either literally or by the doctrine of equivalents, because Defendants have known about the '802 patent and how Defendants' products infringe the claims of the '802 patent but Defendants have not taken steps to prevent infringement by their customers and/or end users. Accordingly, Defendants have acted with the specific intent to induce infringement of the '802 patent.

33. Accordingly, Defendants have induced, and continue to induce, infringement of the '802 patent under 35 U.S.C. §271(b).

34. As discussed above, Defendants have had knowledge of and notice of the '802 patent and its infringement since at least 2005 and no later than SanDisk's discussions with Spyrus in 2006. Despite this knowledge, Defendants continue to commit tortious conduct by way of patent infringement.

35. Defendants have been and continue to infringe one or more of the claims of the '802 patent through the aforesaid acts.

36. Defendants have committed these acts of infringement without license or authorization.

37. Plaintiff is entitled to recover damages adequate to compensate for the infringement.

38. Defendants have and continue to infringe the '802 patent, acting with an objectively high likelihood that their actions constitute infringement of the '802 patent. Defendants have known or should have known of this risk at least as early as 2006. Accordingly, Defendants' infringement of the '802 patent has been and continues to be willful.

## COUNT II
## (DEFENDANTS' INFRINGEMENT OF THE '135 PATENT)

39. Paragraphs 1 through 24 are incorporated by reference as if fully restated herein.

40. United States Patent No. 6,003,135, entitled "Modular Security Device," issued on December 14, 1999 from United States Patent Application No. 08/869,120 filed on June 4, 1997. A true and correct copy of the '135 patent is attached as Exhibit B.

41. On information and belief, Defendants have made, used, offered for sale, sold and/or imported into the United States products that infringe various claims of the '135 patent, and continue to do so. By way of illustrative example, these infringing products include, without limitation, Defendants' hardware encrypting storage solutions, including but not limited to Western Digital's Verdi Self Encrypting Drive, My Book series, My Passport series, Re series, SanDisk's x300s series, and HGST's Ultrastar HE10 series, Ultrastar HE8 series, Ultrastar HA10 series, Ultrastar 7K6000 series, Ultrastar 7K4000, Travelstar Z7K500 series,

Travelstar Z5K1000 series, Travelstar Z5K500 series, Travelstar 5K1000 series and Travelstar 7K1000 series.

42. Defendants have been and now are directly infringing one or more claims of the '135 patent under 35 U.S.C. §271(a), in this judicial District and elsewhere in the United States, by, among other things, making, using, selling, offering to sell and/or importing into the United States for subsequent sale or use hardware encrypting storage solutions that include, for example, (a) a security portion including (i) a cryptographic processor for performing security operations on data; and (ii) an interface to the memory portion; (b) a memory portion including (i) mass storage memory, such as flash or magnetic storage; and (ii) an interface to the security portion; (c) an interface with the host computer (*e.g.*, a USB or SATA interface); and (d) a means for operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device. Exemplary charts showing how Defendants infringe the '135 patent are attached as Exhibits F, G and H.[3] Exhibits F, G and H are based on the public information available to Plaintiff, and Plaintiff reserves the right to amend Exhibits F, G and H based on information obtained through discovery. Accordingly, the aforementioned products infringe the '135 patent literally and/or under the doctrine of equivalents.

43. Defendants actively, knowingly, and intentionally induce, and continue to actively, knowingly, and intentionally induce, infringement of the '135 patent under 35 U.S.C. §271(b) by their customers and end users.

44. Defendants have had knowledge of and notice of the '135 patent and its infringement. For example, SanDisk approached Spyrus around October 2006 about entering into a business relationship. SanDisk unquestionably learned about the '135

---

[3] Plaintiff reserves the right to assert additional claims of the '135 patent against Defendants as the litigation proceeds. For example, Plaintiff expressly reserves the right to assert additional claims in its infringement contentions to be served during the discovery process.

patent during these discussions. SanDisk's awareness and understanding of the '135 patent is further confirmed by SanDisk citation of the '135 patent to the United States Patent and Trademark Office during the prosecution of a number of its patents, including but not limited to U.S. Patent No. 7,373,656 and U.S. Patent No. RE44,641. In any event, Defendants have had knowledge and notice of the '135 patent since at least the filing of this complaint.

45. Defendants have induced their customers and end users to infringe the '135 patent by using hardware encrypting storage solutions to (a) communicate with a host computer to exchange data with the hardware encrypting storage solution; (b) perform security operations on the data; (c) mediate communications so that data must first pass through the hardware encrypting processor; and (d) operably connect the hardware encrypting storage solution in to the host computer in response to an instruction from the host computer. *See, e.g.*, Exs. F, G, H. For example, Defendants encourage their customers and end users to perform infringing methods by the very nature of the products. When using the infringing products, security operations are performed on all data passed between Defendants' infringing products and the customer's or end user's computer.

46. Defendants specifically intend their customers and/or end users infringe the '135 patent, either literally or by the doctrine of equivalents, because Defendants have known about the '135 patent and how Defendants' products infringe the claims of the '135 patent but Defendants have not taken steps to prevent infringement by their customers and/or end users. Accordingly, Defendants have acted with the specific intent to induce infringement of the '135 patent.

47. Accordingly, Defendants have induced, and continue to induce, infringement of the '135 patent under 35 U.S.C. §271(b).

48. As discussed above, Defendants have had knowledge of and notice of the '135 patent no later than SanDisk's discussions with Spyrus in 2006. Despite this

knowledge, Defendants continue to commit tortious conduct by way of patent infringement.

49. Defendants have been and continue to infringe one or more of the claims of the '135 patent through the aforesaid acts.

50. Defendants have committed these acts of infringement without license or authorization.

51. Plaintiff is entitled to recover damages adequate to compensate for the infringement.

52. Defendants have and continue to infringe the '135 patent, acting with an objectively high likelihood that their actions constitute infringement of the '135 patent. Defendants have known or should have known of this risk at least as early as 2006. Accordingly, Defendants' infringement of the '135 patent has been and continues to be willful.

## **PRAYER FOR RELIEF**

Wherefore, SPEX Technologies, Inc., respectfully requests the following relief:

a) A judgment that Defendants have infringed the '802 patent;

b) A judgment that Defendants have infringed the '135 patent;

c) A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendants' past infringement, and any continuing or future infringement of the Patents-in-Suit, up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary, to adequately compensate Plaintiff for Defendants' infringement;

d) An adjudication that Defendants' infringement of the Patents-in-Suit has been willful and deliberate;

e) An adjudication that Plaintiff be awarded treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of the Patents-in-Suit;

f) An adjudication that this case is exceptional within the meaning of 35 U.S.C. § 285;

g) An adjudication that Plaintiff be awarded the attorneys' fees, costs, and expenses it incurs in prosecuting this action; and

h) An adjudication that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

DATED: September 28, 2016

**RUSS, AUGUST & KABAT**

*/s/ Marc A. Fenster*
Marc A. Fenster, SBN 181067
Ben Wang, SBN 228712
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff*
*SPEX Technologies, Inc.*