## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:16-cv-01799-JVS (AGRx)              Date   June 16, 2025

Title   SPEX Technologies, Inc. v. Western Digital Corporation et al.

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                    Not Present

**Proceedings:    [IN CHAMBERS] Order Regarding Post Trial Motions**

Plaintiff SPEX Technologies, Inc. ("SPEX" or "Plaintiff") filed this patent infringement suit against Defendants Western Digital Corporation, Western Digital Technologies, Inc., and HGST, Inc. ("WD" or "Defendants") on September 28, 2016. Complaint, Docket No. 1. This matter proceeded to a jury trial on October 8, 2024. See Day One Minutes, Docket No. 523. The jury returned a verdict finding WD's Ultrastar He 10 and My Book products (the "Accused Products") infringed Claim 25 of U.S. Patent No. 6,088,802 (the "'802 Patent"). Verdict, Docket Nos. 590, 591 (sealed). The jury awarded SPEX $315,715,900 in damages. Id.

The Court addresses WD's Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b) (Docket No. 627) and WD's Motion for Relief from Judgment and a New Trial under Fed. R. Civ. P. 59 (Docket No. 628) here. WD filed a consolidated memorandum in support of both motions. (Memo, Docket No. 637). SPEX filed an opposition (Opp'n, Docket No. 643) and WD filed a reply (Reply, Docket No. 644).

For the following reasons, WD's Rule 50(b) Motion is **DENIED-IN-PART** and **GRANTED-IN PART**. WD's Rule 59 Motion is **DENIED-IN-PART** and **MOOT-IN-PART**.

## I.    BACKGROUND

### A.    Infringement

This case has been pending since 2016. In the earlier stages of the case, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |
|---|---|---|---|

| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |
|---|---|

construed several terms including the "means for providing" limitation and "defined interaction" limitation. See generally, Markman Order, Docket No. 65. The Court found the "means for providing" limitation indefinite for failure to disclose sufficient corresponding structure. Id. at 43. The parties then filed summary judgment motions. See generally, Prior Summary Judgment Order, Docket No. 159. SPEX appealed the Court's noninfringement findings as to certain claims of the '802 Patent as well as the indefiniteness finding. See Appellate Order, Docket No. 167. The Federal Circuit affirmed the noninfringement findings but reversed and remanded on the indefiniteness issue. Id. at 2.

On remand, SPEX asserted only Claims 6, 7, and 25 of the '802 Patent. The parties conducted additional discovery and WD moved for summary judgment of non-infringement of these claims. Summary Judgment Motion, Docket No. 247. Relevant to the "defined interaction" limitation, the Court found Rhyne's opinion that "mass storage" is the "defined interaction incorrect. Summary Judgment Order, Docket No. 309 at 10. The Court found a triable issue of fact as to whether SATA/SAS/USB protocols (the "handshake") could satisfy the limitation. Id. On that basis, the Court denied WD's motion. WD later moved to exclude the "handshake" theory under Rule 37(c). Motion, Docket No. 324. The Court denied that motion based on disclosures in Rhyne's original and supplemental expert reports. Order, Docket No. 491 at 6-8. Trial proceeded on only Claim 25 of the '802 Patent.

B.    Damages

At the post-remand summary judgment stage, the Court excluded SPEX's damages expert. Order, Docket No. 307. WD then filed a motion in limine to preclude SPEX from presenting a reasonable royalty rate based on insufficient evidence and disclosure issues. Motion, Docket No. 325. The Court denied that motion. Order, Docket Nos. 411 (sealed), 412. SPEX presented a damages theory based on licensing efforts and supported by lay witness testimony at trial. During trial, the Court granted WD's Rule 50(a) motion to eliminate SPEX's comparable license theory but allowed SPEX to present a revised damages theory relying on evidence already presented at trial. See Day 6 Minutes, Docket No. 568. WD then moved again under Rule 50(a) to eliminate SPEX's revised damages theory. The Court denied that motion and allowed SPEX to proceed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                        Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

## II.    LEGAL STANDARD

### A.    Rule 50(b)

Considering the grant or denial of a motion for judgment as a matter of law presents "a procedural issue not unique to patent law, which [the Federal Circuit] review[s] under the law of the regional circuit where the appeal from the district court normally would lie." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003); *see also Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006). Rule 50 authorizes the defendant to move for judgment as a matter of law anytime after the plaintiff's case-in-chief. Fed. R. Civ. P. 50(a). In determining whether to grant judgment as a matter of law, the court must determine whether the jury has a "legally sufficient evidentiary basis" to find for the plaintiff. Id. If the judge denies the motion, and the jury later returns a verdict against the defendant, the defendant may renew its motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Like the pre-verdict motion, the post-verdict motion also challenges the sufficiency of the plaintiff's evidence. *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013). If the jury verdict is "supported by substantial evidence," the court must uphold the jury verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). However, if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury," the court may grant judgment as a matter of law to the defendant. *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002) (internal quotation marks omitted). When reviewing the evidence, the court must view the evidence "in the light most favorable to the nonmoving party" and draw "all reasonable inferences" in favor of the nonmoving party. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205-06 (9th Cir. 2008) (internal quotation marks omitted).

### B.    Rule 59

The power of the Court to grant a new trial under Fed. R Civ. P. 59(a) is "confided almost entirely to the exercise of discretion on the part of the trial court." *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir.1990). In deciding a motion for new trial, the Court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                    Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir.1987). The district court
should "set aside the verdict of the jury, even though supported by substantial evidence,
where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the
evidence." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) ("[T]he district
court has the duty to weigh the evidence as the court saw it . . . .") (internal alteration marks,
quotation marks, and citations omitted). However, a court should grant a new trial only
when it "is left with the definite and firm conviction that a mistake has been committed,"
Landes Constr., 833 F.2d at 1372, and it "may not grant a new trial simply because it would
have arrived at a different verdict." Silver Sage Partners, Ltd. v. City of Desert Hot Springs,
251 F.3d 814, 819 (9th Cir. 2001).

**IV.    DISCUSSION**

    A.    Infringement

        1.    "Target Means"

WD argues that SPEX's technical expert, Dr. Rhyne, admitted at trial that the "target
means" in the accused products does not "enabl[e] the defined interaction with a host
computing device." Memo at 6-7. WD therefore argues that the evidence cannot support
the jury's infringement finding and requests judgment as a matter of law of no infringement.
See id. SPEX argues that substantial evidence supports the jury's findings because Rhyne
did not make the admission WD contends he did. Opp'n at 3.

The Target Means Limitation. Claim 24 of the '802 Patent, from which Claim 25
depends, discloses, "target means for enabling a defined interaction with a host computing
device." '802 Patent, Claim 24. The Court instructed the jury that the target means
limitation has the function disclosed in the claim and has "corresponding structures of '1.
a memory module adapted to enable nonvolatile storage of data; 2. a communication module
adapted to enable communications between the host computing device and a modem or LAN
transceiver; 3. a smart card reader; or 4. biometric device.'" Day 7 Trial Tr., Docket No.
643-13 at 58:18-59:8. The Court further clarified that "[e]nabling does not require active
participation." Id. Consistent with its claim construction ruling, the Court also instructed
the jury that "defined interaction" means "an interaction that can provide one or more of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)          Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

variety of functionalities." Id.; see also Markman Order, Docket No. 65 at 10.

At summary judgment, SPEX identified the handshake as meeting the defined interaction limitation. Summary Judgment Order, Docket Nos. 360, 309 (sealed) at 10 (discussing SAS and SATA protocols). Rhyne previously identified "mass storage" as meeting the "defined interaction" limitation. Id. The Court found that "mass storage," a functionality, cannot be the defined interaction. Id.; see also Order Denying Previously-Deferred Portions of Apricorn's Noninfringement Summary Judgment Motion, Docket No. 241-2 in this action at 7. However, a protocol in which the disk is identified as a mass storage device (the handshake) could be the interaction. The Court found that "the testimony of Dr. Rhyne establishes a connection between the protocols and the target means." Id. at 11. "Dr. Long characterizes the protocols as 'defined interactions,'" and other fact witness testimony, "provides additional detail regarding the functionality of the SAS, SATA, and USB connection protocols in the accused products." "All of this evidence, taken together, at least raises a triable issue of fact as to whether the accused products include a 'target means' that enables a 'defined interaction.'" Id.

Rhyne's Trial Testimony. At trial, Rhyne testified that the spinning disk in the accused products meets the "target means" limitation and the "defined interaction" is the handshake. Day 4, Vol. I Trial Tr., Docket No. 637-6 at 131:23-25 and 134:9-15; see also Day 3, Vol. II Trial Tr., Docket No. 637-5 at 66:13-18 (explaining that the USB Protocol handshake is a standard involving a request to identify a device and a response that the device is a storage device); see also id. at 69:22-70:13 (providing more detail about the request, "GET_DESCRIPTOR," and response, code 08H, that make up the handshake).

On cross examination, Rhyne testified that the spinning disk itself does not enable the defined interaction. Id. at 137:11-5. He explained that the spinning disk, as part of the entire drive and including other components, such as control and handshake electronics, allows the handshake protocol to occur. Id. at 136:10-137:5 and 134:16-25 ("[I]t's not the disk itself, it's the capability built into the disk *drive* . . .") (emphasis in original). He also explained that the code 08H is stored in SPI flash memory. Day 4, Vol. I Trial Tr., Docket No. 637-6 at 41:15-42:3. Thus, though Rhyne does not identify the SPI flash memory as the target means, he testified that it includes information about the target means. Day 4, Vol. II Trial Tr., Docket No. 637-7 at 62:22-63:10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                    Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

On direct and redirect, Rhyne clarified that the "enables" claim limitation is met
because the spinning disk (target means) can only be identified (defined interaction) as a
storage device because that is what it is. Day 4, Vol. II Trial Tr., Docket No. 637-7 at 46:5-
14; Day 4, Vol. I Trial Tr., Docket No. 637-6 at 41:15-42:3 (explaining that spinning disk
enables memory to return code 08H as part of handshake, which indicates the spinning disk
is a mass storage device); see also Day 3, Vol. II Trial Tr., Docket No. 637-5 at 65:10-19
("[T]he answer here is it just says, I am such a device.").

Rhyne's testimony on direct and cross, as summarized above, interprets "enables" in
two different ways. Consistent with WD's line of questioning on cross examination, Rhyne
offered testimony interpreting "enables" to refer to the hardware and software components
that must interact for the handshake to occur. To that end, Rhyne agreed that the spinning
disk alone does not enable the defined interaction. Rather, other components, including the
control and handshake electronics, as well as SPI flash memory, work together to facilitate
the interaction. Consistent with his direct testimony, Rhyne alternatively interpreted
"enables" to mean the circumstances that must exist in order for the spinning disk to be
identified as a storage device through the handshake protocol. Rhyne explained that the
defined interaction, in which the disk is identified as a storage device, can only occur
because the disk is in fact a storage device.

Rhyne did not admit that the target means does not enable the defined interaction
under any circumstances. Rather, as discussed above, Rhyne interprets the term "enables"
in two different ways. He admitted that, using one sense of the word "enables," the spinning
disk itself does not enable the defined interaction. He resisted the way WD's counsel
phrased its questions when he ultimately admitted this. Day 4, Vol. I Trial Tr., Docket No.
637-6 at 137:11-5; compare with ParkerVision, Inc. v. Qualcomm Inc., 627 F. App'x 921,
924 (Fed. Cir. 2015) (affirming JMOL of non-infringement given "unequivocal" testimony
on cross establishing non-infringement). There is also no requirement in the claim language
or the Court's construction that the spinning disk, in isolation, must enable the defined
interaction. Rhyne also affirmatively testified that using a different sense of the word,
"enables," the target means more directly enables the defined interaction. This
inconsistency, alone, does not warrant a different outcome. Presidio Components, Inc. v.
Am. Tech. Ceramics Corp., 702 F.3d 1351, 1359 (Fed. Cir. 2012) (finding "the jury had the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |

| | |
|---|---|
| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |

ultimate discretion to evaluate" inconsistent testimony given under direct and within the context of a hypothetical posed by opposing counsel on cross).

Rhyne's testimony under either interpretation of "enables" supports the jury's decision and is not conclusory like the testimony at issue in the authority WD cites. See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("Dynacore's expert's opinions are precisely conclusory assertions, reached using words in ways that contradict their plain meaning, that a critical claim limitation is found in the accused device."); J.G. Peta, Inc. v. Club Protector, Inc., 65 F. App'x 724, 728 (Fed. Cir. 2003) (affirming decision to disregard expert testimony that did not explain how the identified components performed the claim limitations).

Accordingly, WD's argument that substantial evidence does not support the jury's verdict on infringement is not persuasive. The evidence at trial permitted the jury to find that the spinning disk is only identified as storage because that is what it is, meeting the "target means" limitation. For the same reason, counsel for SPEX's later statements that Rhyne testified that the rotating disk enables the handshake did not misrepresent the record. See Day 7 Trial Tr., Docket No. 637-10 at 86:25 ("[T]he rotating disk enables [the handshake] by being storage.") and 87:5-6 ("[I]t is the rotating disk being storage that allows it to do so.").

The remaining question here is whether Rhyne, and the Court, via Instruction No. 14, interpreted the term "enables" correctly.

The "Enables" Dispute. To resolve a dispute between the parties, the Court instructed the jury that "[e]nabling does not require active participation." Day 7 Trial Tr., Docket No. 643-13 at 59:1. The parties raised a similar dispute in the Apricorn case:

In their supplemental briefs, the parties appear to agree that "enabling" covers circumstances where, for instance, a defined interaction is either directly or indirectly "enabled" by a "target means." See, e.g., Apricorn Resp. Supp. Br. at 5–6. But the parties dispute whether "enabled" includes more passive circumstances where the "target means" simply makes the defined interaction possible, or more active circumstances where the "target means" must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |
|---|---|---|---|

| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |
|---|---|

somehow participate in the performance of the defined interaction.

Order Denying Previously-Deferred Portions of Apricorn's Noninfringement Summary Judgment Motion at 7, SPEX Tech., Inc. v. Apricorn, Case No. 16-cv-07349 (C.D. Cal. Jan. 7, 2020), filed at Docket No. 241-2 in this action. In the Apricorn case, the Court determined that "enables" does not "require[] active work on the part of the target means," and can be "met by virtue of the target means' ability to provide certain functionalities and be part of the overall system of components in communication with the computing device." Id. at 9. The reasoning in the Apricorn case applies equally here.

WD's cited authority concerns claim construction rules for identifying corresponding structure for means plus function claim terms. The cases stand for the principles that corresponding structure must perform the recited function and that the corresponding structure has to include everything that performs the function. See Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1370 (Fed. Cir. 2001); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1119 (Fed. Cir. 2002). Here, the "target means" limitation is a means plus function limitation, enabling the defined interaction is the function, and the spinning disk is the target means. Under the first sense of the term "enables," WD has a colorable argument that the spinning disk is not the correct structure because other software and hardware is needed to actually enable the defined interaction. Under the second sense of the term "enables," however, the spinning disk itself enables the interaction in which the disk is identified as a storage device. Accordingly, the Court finds that the jury's determination supported.

The Disclosure Issue. The Court already evaluated this issue in its ruling on WD's Motion in Limine No. 1. Order re Motions in Limine, Docket No. 491 (sealed) at 6-8. WD's arguments amount to a request to reconsider this ruling in view of Rhyne's trial admissions that "everything [he] said this morning about the defined interaction or everything [he] said last night about the defined interaction" did not appear in his original expert report but may have appeared in his supplemental expert report. Day 4, Vol. I Trial Tr., Docket No. 637-6 at 117:5-18. Rhyne later testified that "contrary to [counsel for WD's] suggestions during [his] cross examination, [he] did, from [his] very first report and all through, refer to the interaction protocol." Day 4, Vol. II Trial Tr., Docket No. 637-7 at 45:4-9. While acknowledging Rhyne's confusion about what was in his original report, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)          Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

Court does not find his admissions justify reconsideration of the initial order.  The Court
maintains its prior ruling.

For the foregoing reasons, the Court **DENIES** WD's Rule 50(b) motion as to the
"target means" limitation on liability.

2.    "Means for Providing . . ."

WD argues that SPEX's identification of the handshake as the defined interaction is
improper because SPEX identifies the same response and request, making up the handshake,
as also meeting the response and request requirements of the "means for providing . . ."
limitation.  Motion at 11; Reply at 7.  "Where a claim lists elements separately, the clear
implication of the claim language is that those elements are distinct component[s] of the
patented invention."  Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249,
1254 (Fed. Cir. 2010) (internal citations and quotations omitted).  However, this
presumption can be overcome depending on the language of the claims and the
specification.  See Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1333
(Fed. Cir. 2006); see also Google LLC v. EcoFactor, Inc., 92 F.4th 1049, 1058 (Fed. Cir.
2024) ("These cases do not create a *per se* rule that separately listed claim elements are
distinct components, regardless of the intrinsic record.")

Here, Claim 24, from which Claim 25 depends, discloses both "target means for
enabling a defined interaction with a host computing device" and "means for providing to
a host computing device, in response to a request from the host computing device for
information regarding the type of the peripheral device, information regarding the function
of the target."  '802 Patent, Claim 24.  The parties did not raise a Becton dispute regarding
these limitations during claim construction.  Doing so now, after a jury trial, is untimely.
Moreover, it is not clear from a plain reading of the claim language that the response and
request process referenced in the "means for providing" limitation is distinct from the
defined interaction, especially because the defined interaction is "with a host computing
device" and the response is to a request "from the host computing device."  See id.  For at
least these reasons, substantial evidence supports the jury's determination as to this
limitation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

3.    "Means for Enabling . . ."

WD argues that Rhyne failed to show that the accused products meet the "means for enabling communication between the security means and the target means" limitation because he only compared the accused products to a generic, conventional computer bus instead of "conventional computer bus 615" shown in FIG. 6 of the '802 Patent.  Memo at 15.  SPEX argues the evidence supports the jury's finding because "conventional computer bus 615" is a generic conventional computer bus and does not require the features WD identifies.  See Opp'n at 14.

The "Means for Enabling" Limitation.  Claim 24 of the '802 Patent, from which Claim 25 depends, discloses, "means for enabling communication between the security means and the target means."  '802 Patent, Claim 24.  The Court instructed the jury that this limitation has the function recited in the claim language and "a corresponding structure of 'conventional computer bus 615.'"  Day 7 Trial Tr., Docket No. 643-13 at 59:4-8.  The '802 Patent discloses that "[t]he security functionality 611, memory device 612, I/O device 613 and target functionality 614 can each be implemented by conventional devices and can communicate with each other via a conventional computer bus 615, as is well known and understood."  '802 Patent at 6:40-45.  FIG. 6 shows the "conventional computer bus 615" within a system:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |
|---|---|---|---|

| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |
|---|---|

Id., FIG. 6.

At summary judgment, the Court acknowledged the parties' dispute as to whether "'conventional bus 615' necessarily requires 'a shared highway' and precludes intervening devices and data changes." Summary Judgment Order, Docket No. 309 at 12. The Court determined there was a triable issue of fact as to whether a person having ordinary skill in the art would find the identified buses in the accused products identical or equivalent to "conventional computer bus 615." Id.

Legal Standard. "Literal infringement of a [means plus function claim] limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1267 (Fed. Cir. 1999). "It remains true, of course, that corresponding structure need not include all things necessary to enable the claimed invention to work. It is equally true, however, that corresponding structure must include all structure that actually performs the recited function." Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1119 (Fed. Cir. 2002) (internal citation omitted). An applicant that chooses to use means plus function language limits the scope of the claim to the specific corresponding structure disclosed in the specification. See Mettler-Toledo, Inc. v. B-Tek Scales, LLC, 671 F.3d 1291, 1296 (Fed. Cir. 2012) (limiting patentee to the specific type of A/D converter disclosed in the specification instead of generic A/D converters, which the specification did not disclose).

Rhyne's Testimony. Rhyne testified that the '802 Patent discloses that the "conventional computer bus 615" was "well known and understood. Day 3, Vol. II Trial Tr., Docket No. 643-6 at 77:9. He testified the "conventional computer bus" is not limited to component 615 in the '802 Patent and is instead "a very broad term that computer engineers understand." Id. at 77:10-14. He referenced technical dictionaries in support of his understanding. Id. at 77:20-22.

As to the MyBook accused product, Rhyne identified the H_APB bus and the S_APB bus as conventional computer buses meeting the structure limitation. Id. at 80:12-21; see also id. at 82:16-18 and 83:17-21 ("[I]t's the highway, if you will, that allows communication from the [AES block] to the [target storage].") As to the UltraStar accused

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:16-cv-01799-JVS (AGRx)                    Date    June 16, 2025

Title        SPEX Technologies, Inc. v. Western Digital Corporation et al.

product, Rhyne identified a DMA bus, which he also contends is a conventional computer
bus. Id. at 84:20-23.

Rhyne's wording is not quite accurate. The corresponding structure is in fact limited
to "conventional computer bus 615." See Mettler-Toledo, 671 F.3d at 1296. However, this
is a distinction without a difference. There is no indication in the '802 Patent that the
applicant intended for "conventional computer bus 615" to point to a specific type of
computer bus as opposed to a generic bus that would be well known in the art. The word
"conventional" supports Rhyne's interpretation. WD's argument that "conventional
computer bus 615" is limited only to buses lacking intervening components because FIG.
6 does not show intervening components is not persuasive. Rhyne testified that a person
having skill in the art would understand that the identified buses are conventional buses,
notwithstanding the intervening components. Day 4, Vol. I Trial Tr., Docket No. 637-6 at
78:7–13 ("It's a communications pathway. That's all there is to it."). This situation is
different from the situation at issue in the appeal, and in Mettler-Toledo, because the patent
does not identify a specific type of component, it identifies a conventional component. See
SPEX Techs., Inc. v. W. Digital Corp., 859 F. App'x 557, 561 (Fed. Cir. 2021); see also 671
F.3d at 1296.

Substantial evidence support's the jury's liability finding as to this limitation. The
jury was entitled to credit Rhyne's testimony that "conventional computer bus 615" in the
'802 Patent merely refers to a generic computer bus known in the industry. The jury did not
have to credit WD's argument that "conventional computer bus 615" necessarily lacks
intervening structures in physically connecting the target means and security means. The
claim language discloses "enabling;" it does not disclose a physical connection. Rhyne
identified components in each of the accused product groups that he opined would be a
conventional computer bus and would enable communication between the target means and
security means. The Court need not consider the doctrine of equivalents argument, which
pertains only to the Ultrastar products, because substantial evidence supports a
determination of literal infringement.

For the foregoing reasons, the Court **DENIES** WD's Rule 50(b) motion as to the
"means for enabling" limitation on liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |
|---|---|---|---|

| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |
|---|---|

B.    Damages[1]

1.    The Parties' Positions

SPEX argues substantial evidence supports the jury's damages determination. Opp'n at 17.  SPEX argues that customers demanded hardware encryption as a condition to purchasing devices and that WD charged $10-20 premiums for the encryption. Id.  SPEX contends these premiums are pure profit because costs were otherwise the same for devices that did not include encryption and because WD did not offer any evidence of non-infringing alternatives.  Id.

WD argues that SPEX did not present substantial evidence of profit-splitting at trial. See generally Memo.  Specifically, WD argues that SPEX (1) did not show that the $10-20 premiums actually applied to the accused products, (2) did not show that WD considered the premiums in 2007, at the time of the hypothetical negotiation, (3) did not apportion out non-infringing features, and (3) draws incorrect legal conclusions regarding non-infringing alternatives.  Reply at 10-34.

2.    Legal Standard

---

[1]Because the Court addresses the damages issue on the merits, the Court does not address whether SPEX made sufficient timely disclosures under the Federal Rules of Civil Procedure to present the damages theory which it ultimately offered at trial.  See Fed. R. Civ. P.  26(a)(2) and (e). The Court doubts that SPEX did.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                    Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. The patentee has the burden to prove damages. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citations omitted). There are several approaches for calculating a reasonable royalty including (1) "the analytical method" and (2) "the hypothetical negotiation."[2] Id. Relevant here, the analytical method involves "subtract[ing] the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices." Id. (citing TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 899 (Fed. Cir. 1986)).

Because the analytical method is a less popular method than the hypothetical negotiation, there is less authority concerning what evidence suffices. Still, the cases the parties cite set out the following principles. First, though "evidence of actual profits is generally admissible," the correct focus is "on the date when the infringement began." TWM Mfg., 789 F.2d at 899; see also Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766, 772 (Fed. Cir. 2014) (The correct inquiry is "what the parties would have anticipated, looking forward when negotiating," not "a backward-looking inquiry into what turned out to have happened."). Second, the analysis does not factor in the infringer's efficiency or otherwise cap damages based on what "the infringer could profitably pay." See Aqua Shield, 774 F.3d at 771. Finally, many different types of evidence can be relevant to the analytical method of determining a reasonable royalty, including "licenses, business prognostications, and information about cost savings or value enhancements compared to alternatives." Id. at 772; see also Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1296–98 (Fed. Cir. 2015) (affirming damages calculation based on expert report that considered annual reports, cost and revenue spreadsheets, business surveys, and a lack of non-infringing alternatives).

3.    The Evidence

At trial, Western Digital personnel testified that WD introduced an encryption option to its products to be competitive in the market. Day 5, Vol. I Trial Tr., Docket No. 643-10

---

[2]    Though Lucent describes the analytical method and the hypothetical negotiation as alternative methods of determining a reasonable royalty, other cases appear to consolidate the two methods. See generally, Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766 (Fed. Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                    Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

at 40:13-24 (testifying that WD introduced an encryption option for its RE products during the 2012 to 2013 time frame). Some customers even required the encryption option. Id. at 41:9-42:11; see also Chagnon Depo Designation, Docket No. 643-24 at 15:12-16:2 (testifying that HGST introduced hardware encryption in the Travelstar product during the 2007/2008 time frame due to customer demand) and 24:17-21 (testifying that HGST introduced hardware encryption in the Ultrastar line of products due to customer demand); see also Ottrey Depo Designation, Docket No. 643-26 at 86:16-87:09 (testifying that WD opted to maintain encryption features in the My Book products, first introduced in 2007, because customers expected it).

SPEX also introduced expert and lay witness testimony that hardware encryption has certain advantages compared to software encryption. Day 4, Vol. I Trial Tr., Docket No. 643-7 at 54:6-57:19 (describing speed, security, and "plug-and-play" advantages); see also Day 3, Vol. I Trial Tr., Docket No. 643-5 at 34:10-20 and 36:3-37:2.

SPEX also introduced evidence that WD considered a $10-20 "adder" for hardware encryption features. Chagnon Depo Designation, Docket No. 643-24 at 16:21-17:18 (testifying that WD charged different prices for models including encryption during the 2007/2008 time frame and referencing the pricing figures in PX686); Day 5, Vol. I Trial Tr., Docket No. 643-10 at 43:20-44:5 (discussing $20 adder for self-encrypting drive products) and 44:13-16 (testifying that the bill of materials for self-encrypting versus non-self-encrypting products were "similar"). Trial Exhibit PX686, titled "HGST Pricing Data," (Docket No. 643-30) is a spreadsheet with several columns showing $10-20 adders for certain encryption features. The amounts in the spreadsheet do not reflect the actual price paid by customers. Schembri Depo Designations, Docket No. 550-9 at 108:23-109:23.

4.    The Adder Evidence is Not Related to the MyBook Products

The only numerical evidence supporting an adder of $10-20 is PX686 (Docket No. 643-30) as well as the testimony of Chagnon and Bulik. Chagnon's testimony is based on PX686. Bulik's testimony pertains to self-encrypting drive ("SED") products, though he acknowledged the bill of materials for non-self-encrypting products would be similar. WD argued that PX686 and Chagnon's testimony do not establish a premium amount for the MyBook products because the MyBook products are legacy WD products and not HGST

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:16-cv-01799-JVS (AGRx)          Date   June 16, 2025

Title   SPEX Technologies, Inc. v. Western Digital Corporation et al.

products and because the MyBook products use USB interface.  Reply at 13.  Under the interface column, PX686 lists only SATA and SAS interfaces.  The MyBook products do not use either of these interfaces.  Day 4, Vol. I Trial Tr., Docket No. 643-7 at 63:9-14. Further, PX868 is titled "HGST Pricing Data" and none of the listed families are MyBook products.  May 5, 2025 Hearing Tr., Docket No. 649 at 16:38-40:10.  Chagnon's testimony similarly concerns only HGST products, which are not MyBook products.  Chagnon Depo Designation, Docket No. 643-24 at 15:12-16:2.  The MyBook products are legacy WD products.  See May 5, 2025 Hearing Tr., Docket No. 649 at 44:14-15.

As to the MyBook products, this leaves Bulik's testimony.  Bulik testified only that he recalled hearing about a $20 adder in the industry.  Day 5, Vol. I, Trial Tr., Docket No. 643-10 at 46:2-9.  This testimony is too vague and theoretical to support the jury's finding for the MyBook products.  As noted below, there is also an apportionment issue regarding self-encrypting technology.  See § IV.B.6, supra.  Bulik further testified that he was not aware that any WD customers expressed a willingness to pay for an encryption premium for RE products[3] and that information from sales teams and original equipment manufacturers concerning premiums was not considered reliable.  Day 5, Vol. I, Trial Tr., Docket No. 643-10 at 46:2-9.  This statement, coupled with the vague and theoretical statement, and in view of the apportionment issue, leaves the jury's determination as to the MyBook products unsupported.

The spreadsheet does include data for the some of the UltraStar products.  May 5, 2025 Hearing Tr., Docket No. 649 at 40:5-10.  However, as discussed below, the lack of apportionment renders the jury's finding unsupported.  See § IV.B.6, supra.

5.    The Evidence Concerning the Hypothetical Negotiation is Sufficient

PX686 post-dates the date of infringement (2007) by about ten years.  Schembri Depo Designations, Docket No. 643-23 at 98:09-10.  Bulik's testimony also concerns the 2012 time period.  Day 5, Vol. I Trial Tr., Docket No. 643-10 at 43:11-14.  Chagnon's testimony concerns the relevant period but references only PX686 as to the actual amounts of the

---

[3]      The MyBook products are representative of MyBook, MyPassport, and RE Products. Joint Stipulation regarding Representative Products, Docket No. 480.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:16-cv-01799-JVS (AGRx)                 Date   June 16, 2025

Title   SPEX Technologies, Inc. v. Western Digital Corporation et al.

premiums.  The evidence suggests that during the relevant time period WD would have anticipated premiums for encryption features but is scant on details.  The later evidence provides indirect evidence as to the amount of those premiums but only as to the Ultrastar Products.  See § IV.B.4, infra.  The parties also agree that the record shows that both SPEX (Spyrus at the time) and WD were open to licensing in 2007 but does not include much detail as to the types of licenses either party was negotiating or typically negotiated.  WD argues that this lack of factual detail concerning the hypothetical negotiation renders the jury's damages determination unsupported.  Memo at 25.

Though the record does not include much admissible evidence as to either party's licensing practices or the encryption premiums, the testimony from Chagnon and Bulik, a well as the pricing spreadsheet, provide some indication as to what reasonable terms in a hypothetical negotiation would entail.  Accordingly, the Court does not find the jury's determination as the UltraStar products unsupported for this reason.  See Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1310 (Fed. Cir. 2009) (A jury's damages award "must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.").  Still, the determination as to the UltraStar products is unsupported for other reasons.

Similarly, the fact that PX686 and Bulik's testimony post-date the date of infringement, alone, does not mean the jury should have discounted this evidence in determining WD's anticipated profit.  See DMF, Inc. v. AMP Plus, Inc., No. 2:18-CV-07090-CAS-GJSX, 2024 WL 3585191, at *30 (C.D. Cal. July 29, 2024) (collecting authorities explaining that courts may look at events and facts after infringement began as part of the hypothetical negotiation analysis).  Still, the Court is mindful that actual profits cannot cap royalties.  See Aqua Shield, 774 F.3d at 772.  Here, the adders do not actually reflect customer pricing and there is no indication that the jury applied the adders as a royalty cap.  Thus, as to the UltraStar products, they provide admissible, though imperfect, evidence as to the profit WD may have anticipated due to adding the infringing hardware encryption features in 2007.

      6.    The Damages Determination Fails Due to Lack of Apportionment

WD faults SPEX for not apportioning out the benefits of Claim 25 as compared to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:16-cv-01799-JVS (AGRx)                    Date    June 16, 2025

Title    SPEX Technologies, Inc. v. Western Digital Corporation et al.

other claims of the '802 Patent. Memo at 28 (citing Omega Pats., LLC v. CalAmp Corp., 13 F.4th 1361, 1379 (Fed. Cir. 2021)). SPEX argues that Claim 25 is broader than other claims that WD was found not to infringe. Opp'n at 26. The Court does not find any failure to apportion Claim 25 from other claims here, especially because SPEX no longer presents a license-based infringement theory. However, as discussed below, there was a failure to apportion out certain non-claimed features.

WD also faults SPEX generally for not apportioning out non-infringing features. Memo at 28-29. This is not persuasive. Though the Court acknowledges that apportionment is required, the assumption underlying SPEX's damages theory is that any hardware encryption feature in the accused products infringes Claim 25. Thus a premium based on the value add of the hardware encryption feature only, and not the drive as a whole, would not require further apportionment.

WD also argues more specifically that SPEX failed to apportion out non-infringing features from the adders. Reply at 19-20. These include TCG (Trust Computing Group) and FIPS validation as well as self-encrypting technology. Id. WD argues that SPEX did not show Claim 25 includes FIPS and argues that FIPS is not part of the invention Id. at 20-21. WD elicited trial testimony that "FIPS is a separate government standard for security" and that "[p]atents wouldn't claim FIPS." Day 2, Vol. II Trial Tr., Docket No. 643-4 at 60:9-61:11. The "FIPS" column is the only column in the pricing spreadsheet that lists an adder over $10. Accordingly, the Court finds that the determination as to the UltraStar products ($16.25) is not supported due to failure to apportion out FIPS from the adder for hardware encryption. Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 904 F.3d 965, 977 (Fed. Cir. 2018) ("A patentee is only entitled to a reasonable royalty attributable to the infringing features.").

WD also argues that self-encrypting technology is not a part of the claimed invention and should be apportioned out. Reply at 21. This is an additional apportionment issue affecting both the UltraStar products and the MyBook products. See Docket No. 643-36; see also May 5, 2025 Hearing Tr., Docket No. 649 at 49:19-50-10. Because SPEX failed to present evidence accounting for the value of these non-claimed features, the jury's damages determination based on the adders is not supported by substantial evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |

| | |
|---|---|
| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |

    7.      The Non-infringing Alternatives Issue Does Not Present a Basis to Depart from the Damages Award

WD's memorandum focused on the entire market value rule, which SPEX did not rely upon. Memo at 33. The Court declines to evaluate this argument. In its Reply, WD argues that SPEX improperly flips the burden on non-infringing alternatives. Reply at 27. The Court does not agree. SPEX presented evidence that software encryption has certain drawbacks as compared to hardware encryption. See § IV.B.2. The jury was entitled to consider this evidence and determine that software alternatives were not were not relevant alternatives under Georgia Pacific Factors 9 and 13. In other words, the jury was entitled to consider the evidence and conclude there was no next best technology to compare to the patented technology. Still, for the other reasons discussed above, the jury's damages award based on the adders is not supported.

    8.      WD's Arguments Regarding Disparate Rates and Net Losses

Given the above findings concerning the insufficient evidence tying the adders to the MyBook products, as well as the apportionment issues for both the UltraStar and MyBook products, the Court declines to evaluate this argument. The trial record does not support the rates the jury determined.

In sum, substantial evidence does not support the jury's damages award. WD's Rule 50(b) Motion is **DENIED** as to liability but **GRANTED** as to damages.

    9.      Nominal Damages are Appropriate Here

Throughout this litigation, SPEX's damages theory changed as certain evidence and theories became unavailable. At this stage, and for the reasons discussed above, there is insufficient evidence from which the Court could determine a reasonable royalty. TecSec, Inc. v. Adobe Inc., 978 F.3d 1278, 1291 (Fed. Cir. 2020) (35 U.S.C. § 284 "does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts"). Accordingly, the Court enters nominal damages in the amount of $1.

    C.    New Trial Specific Issues

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:16-cv-01799-JVS (AGRx)                    Date   June 16, 2025

Title   SPEX Technologies, Inc. v. Western Digital Corporation et al.

1.   Liability

WD argues that a new trial is appropriate because SPEX did not timely disclose its theory that the handshake is the defined interaction.  Memo at 37.  For the above reasons, this does not provide a basis for a new trial.  See § IV.A.1 (The Disclosure Issue), supra.

WD next argues that the Court's instruction that the target means can be any kind of storage or memory device "confused the jury into thinking that the distinction between spinning disks and flash memory was irrelevant."  Memo at 37.  The Court's construction was not prejudicial.  The issue is whether the target means enables the defined interaction, not whether it is a particular type of storage device.  The jury was entitled to consider whether the spinning disk otherwise met the limitation.  The jury had an opportunity to consider WD's evidence concerning flash memory.    See § IV.A.1 (Rhyne's Trial Testimony), supra. This is not a basis to grant a new trial.

WD also argues that the Court's jury instruction concerning active versus passive enablement was prejudicial.  Memo at 37.  For the reasons stated above, this does not provide a basis for a new trial.  See § IV.A.1 (The "Enables" Dispute), supra.

WD further argues that the Court's refusal to provide a jury instruction that the "defined interaction" cannot be data storage was prejudicial.  Memo at 38.  This decision was not prejudicial.  SPEX did not present a theory at trial that the defined interaction is storage.  SPEX identified the handshake as the defined interaction and argued that the spinning disk enables the handshake, the process during which the spinning disk is identified as a storage device, because it is in fact a storage device.  See § IV.A.1 (Rhyne's Trial Testimony), supra.

Finally, WD argues that SPEX's statements during closing arguments warrant a new trial.  For the reasons discussed above, these statements do not provide a basis for a new trial.  See § IV.A.1 (Rhyne's Trial Testimony), supra.

2.   Damages

The portion of WD's Rule 59 motion addressing damages is **MOOT** in view of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:16-cv-01799-JVS (AGRx) | Date | June 16, 2025 |
|---|---|---|---|

| Title | SPEX Technologies, Inc. v. Western Digital Corporation et al. |
|---|---|

nominal damages award, discussed above.

For the foregoing reasons, WD's Rule 59 Motion is **DENIED-IN-PART** and **MOOT-IN-PART**.

## V.    CONCLUSION

For the foregoing reasons, WD's Rule 50(b) Motion is **DENIED-IN-PART** and **GRANTED-IN-PART**.  WD's Rule 59 Motion is **DENIED-IN-PART** and **MOOT-IN-PART**.  SPEX **SHALL** lodge a proposed Judgment within seven days of this Order.

**IT IS SO ORDERED.**